UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES HUGHES,

      Plaintiff,

v.                                                          Case No. 8:25-cv-02506-AAS

SUPERVISOR GAVIN NESTOR,
GAVIN SEALS,
CEO TIM PERRYMAN,
ATLANTIC SQUIRED SUPPLY, LLC,
AND DYLAN QUILLA

      Defendants.
_____/

## ORDER

Defendants, Atlantic Squared Supply, LLC,[1] Tim Perryman, Dylan Quilla, Gavin Seale, and Gavin Nestor (collectively "defendants"), move to dismiss the Plaintiff James Hughes's amended complaint. (Docs. 14, 25). Mr. Hughes opposes the motion. (Doc. 30).

---

[1] Atlantic Squared Supply's name is misspelled in Mr. Hughes's complaint (Doc. 14), and therefore in the docket. This does not affect the proceedings. *See Padernera v. Lagenwalter of Kendall, Inc.*, No. 07 60421 CIV COHN, 2007 WL 1723664 at n. 1 (S.D. Fla. June 13, 2007); *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding a pro se plaintiff's pleadings are held to a less stringent standard and the court must liberally construe language in the plaintiff's favor.).

1

## I.    BACKGROUND

On September 17, 2025, Mr. Hughes filed a complaint against Mr. Nestor, Mr. Perryman, and Mr. Seales. (Doc. 1). On October 6, 2025, Mr. Hughes filed a motion to amend his complaint. (Doc. 4). The court granted the motion to amend on October 10, 2025. (Doc. 6). On October 20, 2025, Mr. Hughes filed his first amended complaint against the defendants. (Doc. 8). On October 22, 2025, the court dismissed Mr. Hughes's first amended complaint as an impermissible shotgun pleading and granted Mr. Hughes leave to amend his complaint. (Doc. 10).

On November 3, 2025, Mr. Hughes filed his second amended complaint against the defendants. (Doc. 12). On November 7, 2025, the court dismissed his second amended complaint as an impermissible shotgun pleading and granted Mr. Hughes leave to amend his complaint. (Doc. 13).

On November 17, 2025, Mr. Hughes filed his third amended complaint against the defendants. (Doc. 14). In that complaint, Mr. Hughes alleges claims under the Americans with Disabilities Act ("ADA"). (Doc. 14). Specifically, Count I alleges disability discrimination under 42 U.S.C. § 12112(a), Count II alleges failure to accommodate under 42 U.S.C. § 12112(b)(5)(A), and Count III alleges retaliation under 42 U.S.C. § 12203(a). (Doc. 14). On December 26, 2025, the defendants moved to dismiss Mr. Hughes's complaint. (Doc. 25). Mr.

2

Hughes responded in opposition. (Doc. 30).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure Rule 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, a court applies the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, review is generally limited to the four corners of the complaint. When reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A pro

se plaintiff's complaint is liberally construed, but the court will not "serve as de facto counsel" or "rewrite an otherwise deficient pleading." *Albert v. Discover Bank*, No. 24-10224, 2025 WL 1514052 at *1 (11th Cir. May 28, 2025) (citing *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)).

## III.   ANALYSIS

### A. The ADA Claims Against the Individual Defendants

The Eleventh Circuit has held that the ADA "does not provide for individual liability, only for employer liability." *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (explaining that "[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."). The ADA "precludes individual liability for violations of the ADA's employment discrimination provisions. It also precludes individual liability for violations of the ADA's anti-retaliation provisions in the employment context." *Woltz v. Sears, Roebuck & Co.*, No. 6:13-CV-32-ORL-22KRS, 2013 WL 672530, at *3 (M.D. Fla. Feb. 6, 2013); *See Albra v. Advan, Inc.*, 490 F.3d 826, 830–33 (11th Cir. 2007) (internal citations omitted). Thus, all Counts against the individual defendants, Mr. Nestor, Mr. Seals, Mr. Perryman, and Mr. Quilla are **DISMISSED**.

### B. The ADA Claims Against Atlantic Squared Supply, LLC

> *i. Failure to Name Atlantic Squared Supply in the EEOC Charge Does Not Bar Suit*

Atlantic Squared Supply argues that it cannot be held liable because it was not named in Mr. Hughes's EEOC charge. (Doc. 25, pp. 12–13). Instead, Metal Roofing of Florida is named. (Doc. 25-1).

"Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994). The purpose of this rule is "to notify the charged party of the allegations" and "allow[] the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." *Id.* However, "the naming requirement is construed 'liberally,' such that a party unnamed in the EEOC charge may properly be sued so long as the purposes of Title VII are fulfilled." *McCulley v. Allstates Tech. Servs.*, No. CIV.A. 04-0115-WS-B, 2005 WL 1475314 at *23 (S.D. Ala. June 21, 2005) (citing *Virgo*, 30 F.3d at 1358–59). The naming requirement is not meant to operate as a technical "stumbling block" that frustrates the fulfillment of Title VII's statutory objectives. *Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1353–54 (M.D. Fla. 1999).

To determine whether an unnamed party in an EEOC charge may be

subject to federal court jurisdiction, courts in the Eleventh Circuit avoid rigid tests and instead examine the following factors as set out in *Virgo*: "(i) similarity of interest between named and unnamed parties; (ii) whether plaintiff could have ascertained the unnamed party's identity at the time of the EEOC filing; (iii) whether the unnamed party received adequate notice of the EEOC charge; (iv) whether the unnamed party had adequate opportunity to participate in the EEOC conciliation process; and (v) whether the unnamed party will be actually prejudiced by exclusion from the EEOC proceedings." *McCulley*, 2005 WL 1475314 at *103–04; *See Virgo*, 30 F.3d at 1359; *Gordon v. MCG Health Inc.*, 301 F. Supp. 2d 1333, 1338 (S.D. Ga. 2003); *Scelta*, 57 F. Supp. 2d at 1354.

The balance of these factors tips in favor of allowing Mr. Hughes to proceed with his claims against Atlantic Squared Supply. In analyzing the first factor, courts in the Eleventh Circuit typically find sufficient similarity of interest when the unnamed party is the sole owner of the named party. *Harris v. Mothers Making a Change*, No. 1:20-CV-4357-CAP-CCB, 2021 WL 12300765 at *5 (N.D. Ga. July 13, 2021); *see U.S. Equal Employment Opportunity Comm'n v. Princess Martha, LLC*, 705 F. Supp. 3d 1353, 1362 (M.D. Fla. 2023) (finding similarity of interests when the EEOC pleaded the defendants "share common ownership and management"). In contrast, "cases where there is no

6

ownership or management overlap between a named party and an unnamed party, courts often refuse to find a sufficient similarity of interest to allow the suit against the unnamed party to proceed." *Harris*, 2021 WL 12300765 at *5. Here, Mr. Hughes alleges that on or about December 22, 2022, Atlantic Squared Supply purchased Metal Roofing Systems of Florida, and there is overlapping management between the two entities. (Doc. 14, p. 4). The first *Virgo* factor weighs in favor of Mr. Hughes.

The second factor may weigh in a plaintiff's favor where the unnamed entity was not reasonably identifiable at the time the EEOC charge was filed. *Harris*, 2021 WL 12300765 at *7; *see e.g. Virgo*, 30 F.3d at 1359 (where one entity did not yet exist but later assumed the liabilities of its predecessor). By contrast, where a plaintiff could readily have identified the entity but failed to name it in the charge, courts have declined to excuse the omission, even when the plaintiff proceeds pro se. *Harris*, 2021 WL 12300765 at *7. Here, Mr. Hughes alleges he was unaware Atlantic Squared Supply owned Metal Roofing Systems of Florida during his employment. (Doc. 30). "[Mr. Hughes] was a machinist employee, not privy to corporate ownership structures. He reasonably identified his employer as 'Metal Roofing of Florida,' the name used in his workplace." (Doc. 30). He was not given access to materials disclosing ownership by Atlantic Squared Supply. (Doc. 30). Because he was not certain

7

of the corporate structure at the time, he did not name Atlantic Squared Supply in his charge. (Doc. 30). He nevertheless claims he informed the EEOC of potential ownership during his EEOC interview, but the EEOC did not investigate the corporate structure. (Doc. 30). The second *Virgo* factor weighs in favor of Mr. Hughes. *Cf. Princess Martha*, 705 F. Supp. 3d at 1362 ("This factor weighs against a plaintiff who had actual knowledge of the unnamed party's identity.") (citing *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010)).

The third factor, the notice requirement, includes actual notice and "notice to the unnamed party of that party's liability under Title VII for the claims described in the EEOC charge." *Harris*, 2021 WL 12300765 at *8. When an unnamed party is the sole owner of a named party, the unnamed party should have received proper notice of its liability under Title VII. *See Virgo*, 30 F.3d at 1350. Here, Atlantic Squared Supply is the sole owner of Metal Roofing of Florida. (Doc. 14). Additionally, the defendants do not argue any lack of notice of Mr. Hughes's EEOC charge,[2] and the shared ownership and employment between Metal Roofing of Florida and Atlantic Squared Supply supports a reasonable inference of notice. (Doc. 14). The third *Virgo* factor also

---

[2] However, the defendants do argue they are not named in EEOC Charge. (Doc. 25, pp. 12–13).

8

weighs in favor of Mr. Hughes. *See DiGiro v. Pall Corp.*, 993 F. Supp. 1471, 1474 (M.D. Fla. 1998) ("It is well-established that an administrative charge against one defendant may provide sufficient notice to another defendant, when the two are closely related entities.")

The fourth factor centers on whether the unnamed party had notice of the EEOC charge and an opportunity to participate. *Harris*, 2021 WL 12300765 at *8. Courts have recognized "that '[t]he association between defendant via their control by [the CEO and registered agent] and their sharing of a Human Resource Department and counsel creates a unique situation where one entity's participation in the EEOC conciliation process would represent the interests of the other entity.'" *Princess Marta*, 705 F. Supp 3d at 1364 (citing *Hull v. Paramount Printing, LLC*, No. 421CV00190HLMWEJ, 2021 WL 9624561, *5 (N.D. Ga. Dec. 20, 2021)); *see McCulley v. Allstates Tech. Servs.*, No. Civ.A. 04-0115, 2005 WL 1475314, *24 (S.D. Ala. June 21, 2005) (finding that the unnamed party could not credibly argue it lacked notice, "given that the corporate actors handling the charge on [named party's] behalf were also affiliated with [unnamed party]). Here, Mr. Hughes alleges both companies were under the same management and ownership. (Doc. 14, pp. 2–4). Additionally, for the reasons discussed under the third factor, notice may be reasonably inferred. *See Princess Marta*, 705 F.

9

Supp 3d at 1364 (stating "[t]he fourth and fifth *Virgo* factors involve similar considerations to the third.") The fourth *Virgo* factor weighs in favor of Mr. Hughes.

The fifth factor, prejudice, is presumed "when a party does not participate in the conciliation process." *Harris*, 2021 WL 12300765 at *9; *see Gordon*, 301 F. Supp. 2d at 1339 (finding "no evidence that the defendant [was] prejudiced by its exclusion from the EEOC proceedings" because the defendant was "closely related" to the named party). When a party has notice of claims and a strong similarity of interest, courts find less prejudice. *Harris*, 2021 WL 12300765 at *9. Here, Atlantic Squared Supply did not participate in the conciliation process and therefore is presumed to have suffered prejudice. However, because Atlantic Squared Supply owns Metal Roofing of Florida and shares similar interests, (Doc. 14) the prejudice is diminished. Accordingly, the fifth factor weighs slightly in favor of Atlantic Squared Supply, but it carries less weight in the overall balancing analysis.

Last, the Eleventh Circuit also considers "whether an investigation of the unnamed party could have reasonably grown out of the EEOC charge." *Lewis*, 402 F. App'x at 457. This consideration supports the inclusion of an unnamed party when the party's identity or role in the alleged discrimination was or would likely be discovered during the EEOC's reasonable investigation.

10

*Id.* Here, Mr. Hughes alleges he disclosed the potential ownership of Metal Roofing of Florida by Atlantic Squared Supply. (Doc. 30). This disclosure and the corporate structure of the two entities could have prompted an investigation into Atlantic Squared Supply. Therefore, this consideration weighs in favor of Mr. Hughes.

When considered together, the *Virgo* factors weigh in favor of Mr. Hughes. As such, Mr. Hughes's claims proceed. *See Lewis v. Tegna, Inc.*, No. 824CV00402WFJSPF, 2024 WL 1604073 at *3 (M.D. Fla. Apr. 12, 2024) (permitting a claim to proceed past the motion to dismiss stage against an unnamed party); *Princess Martha*, 705 F. Supp. 3d at 1360–65 (analyzing the *Virgo* factors and permitting the claim to proceed past the motion to dismiss stage).

### ii.  *Mr. Hughes Exhausted His Administrative Remedies*

Atlantic Squared Supply also argues Mr. Hughes's complaint must be dismissed because he failed to exhaust administrative remedies by including information in his complaint not in the EEOC charge. (Doc. 25). Atlantic Squared Supply is correct that prior to filing a complaint under the ADA, a plaintiff must first file a charge of discrimination with the EEOC. *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). The purpose of this step "is that the [EEOC] should have the first opportunity to investigate

11

the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983). However, judicial claims outside the scope of the EEOC complaint are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint. *Gregory*, 355 F.3d at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). Further, courts are cautious to bar Title VII claims for procedural technicalities. *Gregory*, 355 F.3d at 1280; *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (noting "the scope of an EEOC complaint should not be strictly interpreted.").

The proper inquiry here is whether the allegations in Mr. Hughes's complaint are likely or reasonably related to, or grow out of, the allegations contained in the EEOC charge following his termination. *Browning v. AT & T Paradyne Corp.*, 838 F. Supp. 1568, 1572 (M.D. Fla. 1993). In his charge, he complained of a failure to provide accommodations after he requested them, and complained of his termination shortly after attending a medical appointment. (Doc. 25-1). Construed liberally, the factual allegations in the EEOC charge could reasonably be expected to encompass claims of disability discrimination, denial of reasonable accommodations, and retaliation. *See e.g. Browning,* 838 F. Supp. At 1572 (finding plaintiff's unlawful discharge claim

12

was reasonably related to his EEOC charge because, in his EEOC questionnaire, he specifically alleged the employer's discriminatory conduct was an effort to force him to quit. His eventual termination was based on the same allegedly discriminatory behavior, making the discharge the natural and foreseeable culmination of conduct under investigation). Mr. Hughes sufficiently exhausted his administrative remedies.

### C. Mr. Hughes's ADA Claims Against Atlantic Squared Supply

#### i. Count I – Disability Discrimination

"The ADA prohibits employers from discriminating against disabled employees." *Surtain v. Halmin Terrace Found.*, 879 F.3d 1239, 1246 (11th Cir. 2015) (citing 42 U.S.C. § 12112(a)). "To state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest '(1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a 'covered entity' discriminated against him on account of his disability.'" *Surtain*, 789 F.3d at 1246 (citing *Cramer v. Fla.*, 117 F.3d 1258, 1264 (11th Cir. 1997)).

A "disability" under the ADA is defined as "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such impairment." 42 U.S.C. § 12102(2). The ADA defined a "qualified

13

individual" as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Applying these standards, Mr. Hughes has plausibly stated a claim for disability discrimination under the ADA. Mr. Hughes alleges he suffers from multiple medical conditions, including a herniated disc, rhabdomyolysis, and bullous pemphigoid which limit major life activities including working, walking, concentrating, and major bodily functions. (Doc. 14, pp. 4, 9–10). Mr. Hughes further alleges he was a qualified individual, having performed his job satisfactorily for three years and having been regarded as the "#2 guy" in his role. (Doc. 14, p. 10). Mr. Hughes alleges Atlantic Squared Supply, a covered entity, took adverse employment actions against him on account of his disability including, demotion, disparate treatment compared to other injured employees, threats of discipline and termination, and ultimately termination. (Doc. 14, pp. 5, 10).

Atlantic Squared Supply, in sum, argues Mr. Hughes's allegations are vague and lack specific details, such as the identities of comparators or the names of involved employees. (Doc. 25). However, "[t]o survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations . . . but must give the defendant fair notice of what the plaintiff's claim is and the

14

grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Accepting the well-pleaded allegations as true and drawing reasonable inferences in Mr. Hughes's favor, the court concludes the complaint plausibly alleges disability discrimination under the ADA 42 U.S.C. § 12112(a). *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). The defendants' motion to dismiss Mr. Hughes's ADA discrimination claim is **DENIED**.

### ii.  *Count II – Failure to Accommodate*

In contrast to a claim for intentional discrimination (Count I), "a failure to make reasonable accommodations claim requires no animus and occurs when a covered entity fails to fulfill its affirmative duty to 'make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability' without demonstrating that 'the accommodation would impose an undue hardship on the operation of the business.'" *Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *4 (11th Cir. Aug. 24, 2007) (quoting 42 U.S.C. § 12112(b)(5)(A)). To properly allege a failure to accommodate claim, a plaintiff must allege (1) he is disabled, (2) he is a qualified individual, (3) he made a specific request for a reasonable accommodation, and (4) the employer failed to provide a reasonable accommodation or failed to engage in a requisite interactive process to identify

15

a reasonable accommodation. *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020).

A reasonable accommodation is a change or adjustment to the workplace or job duties that allows an employee to carry out the "essential functions" of the position. *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016). Examples of a reasonable accommodation include "job restructuring; modified work schedules; reassignment to a vacant position; acquisition or modification of equipment; appropriate adjustment or modifications of examinations, training materials, or policies; and other similar accommodations for individuals with disabilities." *Bender v. Sec'y, Dep't of Def.*, No. 21-12103, 2022 WL 3703805 at *3 (11th Cir. Aug. 26, 2022); 42 U.S.C. § 12111(9).

To state a claim for failure to accommodate, a plaintiff must plead how he can perform the essential functions of their role with the reasonably requested accommodation. *See Bodie-Jernigan v. Sch. Bd. Of Broward Cnty., Fla.*, No. 24-12593, 2025 WL 2741931 at *3 (11th Cir. Sept. 26, 2025) (finding a plaintiff "did not plead sufficient facts showing that she could maintain discipline or effectively teach online—two essential functions of her job."). If a plaintiff pleads he can perform the essential functions of his job, "without more, [it] is conclusory, and not enough to survive a motion to dismiss." *Id.*; *Salyer v Amsouth Bank*, No. 8:04-CV-2543-T-17MAP, 2007 WL 9723535 at *2 (M.D.

16

Fla. Apr. 18, 2007) (finding plaintiff failed to state a claim because she did not "explain how" any reasonable accommodations "would have allowed [her] to perform the essential functions of her job.").

Mr. Hughes is a qualified individual with a disability.[3] However, he does not allege how any of his requested accommodations—light work, air conditioning, an exhaust fan, and night shift assignments—would allow him to meet the essential functions of his job. Rather, he offers only the conclusory assertion that "[w]ith reasonable accommodations, [he] could have performed the essential functions of his job." (Doc. 14, p. 11). Such a bare allegation, without factual support describing the essential functions of the job or how the requested accommodations would permit their performance, is insufficient to survive a motion to dismiss. Accordingly, the defendants' motion to dismiss Mr. Hughes's failure to accommodate claim is **GRANTED**.

### iii.   *Count III – Retaliation*

The ADA prohibits employers from taking adverse action against individuals because they challenged conduct prohibited by the ADA or because

---

[3] Mr. Hughes does not address his qualifications under Count II, and also does not elaborate on the nature of his impairments or the limitations imposed by his disability in that count. However, because he sets forth those allegations in Count I, the court will rely on those allegations for its analysis of Count II. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding a pro se plaintiff's pleadings are held to a less stringent standard and the court must liberally construe language in the plaintiff's favor.).

they filed a complaint or charge under it. *Bodie-Jernigan*, 2025 WL 2741931 at *3; *see* 42 U.S.C. § 12203(a). "To state a retaliation claim, a plaintiff must plead that (1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Bodie-Jernigan*, 2025 WL 2741931 at *3 (quoting *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)).

A request for a reasonable accommodation is considered a "'statutorily protected activity' only if the plaintiff 'had a good faith, objectively reasonable belief that he was entitled to those accommodations.'" *Meyer v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 592 F. App'x 786, 792 (11th Cir. 2014) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998)). "[A] request for leave 'might be a reasonable accommodation in some cases,' so long as the leave request is not for an indefinite leave." *Schoebel v. Am. Integrity Ins. Co. of Fla.*, No. 8:14-CV-426-T-27AEP, 2015 WL 4231670 at *6 (M.D. Fla. July 10, 2015).

Here, Mr. Hughes adequately pleads the first element. Mr. Hughes informed his supervisors about taking medical leave, not an indefinite leave. (Doc. 14, p. 13). This request is a protected activity under the ADA as Mr. Hughes reasonably believed he was entitled to that leave of absence. Mr.

18

Hughes also clears the first element through his request for reasonable accommodations. (Doc. 14, p. 13). *See Bodie-Jernigan*, 2025 WL 2741931 at *3; *Frazier-White*, 818 F.3d at 1388 ("The first element may be met by a request for a reasonable accommodation.").

To meet the second element, an adverse employment action must occur when an "employer took an action that was 'materially adverse,' that is, one that caused injury or harm that would dissuade a reasonable employee from engaging in the protected activity." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858 (11th Cir. 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006)). Mr. Hughes also meets the second element as he alleges Atlantic Squared Supply demoted him, threatened him, and ultimately terminated him. (Doc. 14, p. 10). This conduct caused harm and would dissuade a reasonable employee from engaging in the protected activity. *See Tyler v. Kia Motors Mfg. Georgia, Inc.*, 702 F.App'x 945, 949 (11th Cir. 2017) (finding termination is an adverse employment action).

For a plaintiff to prove the third element, he must establish "(1) the decisionmakers knew of his protected activity; and (2) the protected activity and adverse action were not wholly unrelated." *Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 951 (11th Cir. 2015); *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). Generally, when an

19

adverse action closely follows protected activity, that "temporal proximity" alone can be enough to raise a factual dispute as to causation. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). But if there is no additional evidence linking the two, a gap of about three months between the protected conduct and the adverse action is too long, by itself, to support a reasonable inference of causation. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

Here, Mr. Hughes alleges he engaged in protected activity when he discussed potential medical leave and requested reasonable accommodations, and his supervisors were aware of this activity because it occurred through direct conversations with them. (Doc. 14, p. 13). Mr. Hughes alleges one of the protected activities, his consideration of medical leave, occurred on August 11, 2025, and his termination followed just fifteen days later, on August 26, 2025. (Doc. 14, p. 14). This close temporal proximity supports a reasonable inference of causation. The court concludes Mr. Hughes sufficiently states a claim for retaliation under the ADA. Accordingly, the defendants' motion to dismiss Mr. Hughes's retaliation claim is **DENIED**.

## IV.   CONCLUSION

All counts are dismissed against the individual defendants because the ADA "precludes individual liability for violations of the ADA's employment

20

discrimination provisions." *Woltz*, 2013 WL 672530, at *3; *See Albra*, 490 F.3d at 830–33 (internal citations omitted). Mr. Hughes states a discrimination and retaliation claim under the ADA against Atlantic Squared Supply, LLC (Counts I and III). However, Count II, failure to accommodate, is dismissed because Mr. Hughes does not allege how any of his requested accommodations would allow him to meet the essential functions of his job. Accordingly, the defendant's motion to dismiss (Doc. 25) is **GRANTED in part and DENIED in part.** Atlantic Squared Supply must file its answer to Counts I and III by **March 20, 2026**.

ORDERED in Tampa, Florida, on March 3, 2026.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

21